## Case No. 14,485.

### UNITED STATES v. BABCOCK.

[3 Dill 571.] [1]

Circuit Court, E. D. Missouri. 1876.

EVIDENCE—LETTERS DEPOSITED IN POST-OFFICE —PRESUMPTION AS TO RECEIPT—TELE-
GRAPHIC DISPATCHES.

1. The deposit of a letter in the post-office, postage prepaid, directed to a person at his usual place of residence, is evidence tending to show, and from which a jury may infer, that it reached its destination, and was received by the person to whom it was addressed, if there is nothing in evidence to rebut such inference.

[Cited in Henderson v. Carbondale Coal & Coke Co., 140 U. S. 37, 11 Sup. Ct. 695.]
[Cited in Sullivan v. Kuykendall, 82 Ky. 686.]

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

2. Same general principle applied to telegraphic dispatches.

[Cited in Flint v. Kennedy, 33 Fed. 822.]
[Approved in Smith v. Easton, 54 Md. 146.]

[This was an action by the United States against Orville E. Babcock.] On the trial, one Everest, a witness on the part of the government, and a confessed conspirator, testified that he had procured, at the instance of Joyce, from the United States sub-treasury in St. Louis, two $500 bills; that Joyce received them, and the witness gave evidence from which it might be inferred that each of these bills was placed in a different envelope, and that after they were so placed and directed, postage paid, the witness deposited them (Joyce watching him from the window), in one of the street post-office mail-boxes.

The witness was then asked the question "Whether he observed and could state the address upon the envelopes so deposited?" This question was objected to by the defendant.

[See Case No. 14,484.]

Dyer & Broadhead, for the Government.
Storrs & Porter, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. We are prepared to dispose of the questions raised on the objections to the reception of certain evidence this morning. Mr. Everest, the witness on the stand, gives testimony tending to show that a $500 bill—we will not say that it shows it was actually in the envelope, but evidence tending to show that a $500 bill was placed in an envelope, that the envelope was sealed, and that he deposited it, postage prepaid, in one of the United States post-office mail-boxes, and thereupon the question is put by the counsel for the government: "Did you observe the address or direction of the letter which you say you deposited in the letter-box?" And, to that, objection is made by the counsel for the defendant.

The objection rests, as we understand, upon three grounds. One is, that the evidence is inadmissible because it does not tend to show the fact, or establish the fact, that the letter was ever actually received. The second is, that, even if it is evidence tending to show that, still, in the circumstances of the case, as it actually stands, being all the evidence so far during the progress of the trial that has been introduced for the purpose of inculpating the defendant, it has no probative force. The third objection, as we understand it, is, that the original of the envelope ought to be produced; and the witness cannot be allowed to testify how it was addressed.

We have looked at the authorities as fully as the limited time at our disposal since the recess would allow. Upon the subject of the admissibility of letters, by one person addressed to another, by name, at his known post-office address, prepaid, and actually deposited in the post-office, we concur, both of us, in the conclusion, adopting the language of Chief Justice Bigelow, in Com. v. Jeffries, 7 Allen, 563, that this "is evidence tending to show that such letters reached their destination, and were received by the persons to whom they were addressed." This is not a conclusive presumption; and it does not even create a legal presumption that such letters were actually received; it is evidence tending, if credited by the jury, to show the receipt of such letters. "A fact," says Agnew, J. (Tanner v. Hughes, 53 Pa. St. 290), "in connection with other circumstances, to be referred to the jury," under appropriate instructions, as its value will depend upon all the circumstances of the particular case. It is objected, also, that the evidence, even if admissible, as tending to prove the receipt of the money, should be rejected as immaterial or irrelevant, as having no probative force. If it was admitted here by the counsel for the government, that this was all the evidence which they expected to produce for the purpose of connecting the defendant with the alleged conspiracy, its inconclusive character standing alone, in a case where the defendant's mouth is sealed, would doubtless be such as that the court would be bound to say to the jury that it could not be safely made the basis of a conclusion inculpating the defendant.

It may not have been actually received; the writer may not have been known; his purpose may not have been known, or the person who received it may not have known why it was sent, or may not have invited it, or have known that it was in any way connected with the guilty purpose ascribed to it by the prosecution, or any illegal purpose or plan; and, as men act differently under the same circumstances, it is for the jury, under proper instructions from the court, to look at the letter, if it was sent and received, in connection with all the other circumstances in evidence.

In relation to the third point, no authorities have been adduced to show that it would be necessary to produce the actual envelope before a witness could testify as to how it was superscribed. It strikes us that the rule does not extend so far. For these purposes, and these purposes only, and with these qualifications, we think the testimony is admissible. Evidence admitted.

Upon the announcement of the foregoing opinion, the witness took the stand and testified as follows:

"Colonel Dyer (to the witness). You stated, Mr. Everest, that Colonel Joyce, on the occasion referred to by you, handed to you two sealed envelopes, containing two $500 bills? Mr. Storrs. I object to the question; I object to the statement of the question by the counsel. DILLON, Circuit Judge. Let the wit-

ness restate what he said in that regard. Colonel Dyer. Restate, then, if you please, to the jury, what you said in regard to the two envelopes after you received them from Joyce. A. When Colonel Joyce handed me those two envelopes, he directed me to put them in the letter-box opposite the office, which I did. Q. Where was Joyce at the time you deposited the letters in the letter-box? A. He was watching me from the window. Q. At the time you deposited the letters, did you observe him at that time? A. I saluted him, and he saluted me. Q. You put the letters in? A. I was facing him when I put them in. Q. After the letters came into your hands, and before they were deposited in the box by you, did you examine and see the name and direction on the envelopes? A. Yes, sir. Q. Will you state to the jury how the letters were directed, and to whom they were directed? A. There was one of them directed to W. O. Avery, Washington, D. C., and one to General O. E. Babcock, Washington, D. C. Q. Anything else on the envelopes? A. There was a post-mark, and each one of them had 'Personal' on the left-hand corner. Q. State whether there was any written or printed matter on the envelopes other than you have given. A. None at all. Q. What kind of envelopes were they, Mr. Everest? A. Just ordinary envelopes. Q. You state that the envelopes were post-marked. What do you mean? A. They had postage-stamps upon them."

Telegraphic dispatches. Subsequently the court admitted telegrams in evidence, addressed to the defendant by name, care of the executive mansion, Washington, D. C., on proof that they were received by the telegraph company in Washington, and delivered to the door-keepers at the executive mansion, it being shown that the defendant had an office therein as the private secretary of the president, and that the usage of the door-keepers was to deliver such messages to the persons to whom they were addressed, or place them on their desks. Under such circumstances, telegrams were admitted, without direct proof of their actual delivery to, or actual receipt by, the defendant.

The following is the opinion of the court overruling the objections of the defendant to the introduction of dispatches purporting to be to and from the defendant, and to and from McDonald and Joyce:

DILLON, Circuit Judge (TREAT, District Judge, concurring).—Respecting the objections against the admissibility as evidence of certain dispatches, we have united in a conclusion as respects all except two dispatches, respectively dated the 3d and 5th of December. We reserve the questions arising upon these two dispatches, which are somewhat novel and peculiar, for further consideration. All others fall within certain objections, which we proceed to state and decide.

We are of the opinion that the objection to the dispatches which have been offered in evidence, based upon the ground that they are not relevant or material, is not well taken. The jury is the constitutional tribunal to determine controverted questions of facts, under appropriate advice from the court to assist them in the discharge of this duty. If the evidence offered tends, in any degree, to establish the existence of any material fact, it cannot be rejected as irrelevant, but must be received and submitted to the consideration of the jury in connection with all the other facts and circumstances of the case. To reject the dispatches offered, on the ground that they were irrelevant and immaterial, would be a decision by the court that such dispatches had nothing to do with the alleged conspiracy, and would take that question, which is a question of fact, from the jury, whose exclusive province it is to decide questions of fact. We do not deem it expedient, or even proper, to remark upon the several dispatches, or to say anything in the presence of the jury calculated to disclose the views of the court as to the force and effect of the several dispatches offered in evidence. It is not to be inferred that, in admitting the dispatches, the court holds that they do or do not connect the defendant with the alleged conspiracy. That is a question for the jury, under advice and direction from the court, which should properly come in the charge or summing up to the jury.

As to the objection that some of the dispatches addressed to the defendant were unanswered, we are of the opinion that, under the circumstances of the case, this alone does not constitute a sufficient ground to exclude them. Such dispatches are to be viewed in connection with all the circumstances of the case, including the nature of the dispatches themselves, as calling for an answer or otherwise, and the situation and relation of the parties, and the effect to be given to the circumstance, that no answers were returned (if the jury find the dispatches were received by the defendant), is to be determined by the jury upon the whole evidence, under the rules of the law to be given in the charge to the jury, bearing upon the subject.

As to the dispatches between McDonald and Joyce, confessed conspirators, such dispatches are admissible as statements or acts of conspirators among themselves, in furtherance of the conspiracy; but, as to the defendant, they go for naught, unless he is shown, by other evidence, to be connected with the conspiracy charged in the indictment.

DILLON, Circuit Judge (to District Attorney Dyer). Have you offered all the evidence that you intend to offer respecting the dispatches of December 3d and 5th?

District Attorney Dyer. No, sir.

After the production of other evidence touching the dispatches of December 3d and 5th, the dispatch of December 3d was admitted, and the dispatch of December 5th reject-

ed, because the original dispatch was not produced, nor was it proved to have been in the handwriting of the defendant, or to have been authorized or sent by him, or his direction. The important dispatches received in evidence are given in the charge of the court. See [Case No. 14,486].

In admitting the dispatches to and from William O. Avery, the court remarked that "they do not purport on their face, as we read them, to connect the defendant with this matter, and they are admitted, not by reason of any declarative force upon their own face, but only to show the acts and declarations of Mr. Avery—on the assumption that he shall be found by the jury to be connected with the conspiracy—to show his acts and declarations in connection with Joyce and McDonald, admitted conspirators. The force of the evidence is not for the court to determine. It may or may not be unfavorable to the defendant, as tending to show that some one else, at the other end of the line, was giving information in connection with these frauds."